TUCKER v. WESTERN UNION TELEGRAPH CO. et al.

(Supreme Court, Special Term, Erie County.    March 14, 1916.)

1. ABATEMENT AND REVIVAL ⬥52—DEATH OF PARTY—CAUSES WHICH SURVIVE—ASSIGNABILITY.
    One of the tests whether a cause of action survives or abates on death of plaintiff is whether it is assignable.
    [Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 248–254; Dec. Dig. ⬥52.]

2. ABATEMENT AND REVIVAL ⬥58—DEATH OF PARTY—CAUSES WHICH SURVIVE—ACTION FOR INJUNCTION.
    A cause of action by a stockbroker against a telegraph company for injunction against discontinuance of its service in supplying quotations from the stock exchange, without claim for damages, not based on any contract, but on the theory that defendant as a public service corporation could not legally discriminate against plaintiff, abates on the death of the plaintiff.
    [Ed. Note.—For other cases, see Abatement and Revival, Cent. Dig. §§ 294–309; Dec. Dig. ⬥58.]

3. BANKRUPTCY ⬥145(1)—ADMINISTRATION OF ESTATE—RIGHTS OF TRUSTEE.
    All rights of action in favor of a bankrupt on contract vest in the trustee by virtue of the federal Bankruptcy Act (Act Cong. July 1, 1898, c. 541, 30 Stat. 544).
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 230, 234; Dec. Dig. ⬥145(1).]

4. BANKRUPTCY ⬥156—DEATH OF PARTY—CONTINUANCE OF ACTION—RIGHT OF ADMINISTRATOR.
    Where an action by a bankrupt is pending at the appointment of the trustee, and the trustee takes no action if the cause survives on death of the bankrupt, his administrator would have the right to continue the action.
    [Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 240–246; Dec. Dig. ⬥156.]

Action by Henry C. Tucker against the Western Union Telegraph Company and others.    Heard on motion by defendants to have the action declared abated on account of the death of plaintiff, and cross-motion to have the administrator of plaintiff substituted for the plaintiff, and the action continued in his name.    Defendants' motion granted, and motion to substitute administrator denied.

James O. Moore, of Buffalo, for plaintiff's administrator.
Henry S. Robbins, of Chicago, Ill., Maurice C. Spratt, of Buffalo, and J. M. Richardson Lyeth, of New York City, for defendants.

WHEELER, J.    These motions present the question of law whether the cause of action in this case survives the death of the plaintiff.    The plaintiff was a stockbroker, and for a number of years had been transacting that business at the city of Buffalo, N. Y., with branch offices in other cities.    During this time the Western Union Telegraph Company had supplied the plaintiff by wire with stock quotations from the New York Stock Exchange and elsewhere.    This service the de-

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fendant threatened to discontinue, and this action was brought by the plaintiff to restrain this threatened action, and to restrain the defendants from discontinuing its fast wire service, and from removing tickers from the plaintiff's office.

The plaintiff's action was predicated upon the theory that the Telegraph Company, as a public service corporation, owed a duty to the public to treat alike all who desired its service, and could not legally discriminate against the plaintiff in the matter of furnishing stock quotations. A preliminary injunction was granted, and this was continued pendente lite upon a motion to dissolve. An appeal was taken from this order to the Appellate Division of this court, and the order continuing the injunction affirmed. Shortly after this the plaintiff died, but before his death made a general assignment for the benefit of creditors. Subsequently proceedings in bankruptcy against the plaintiff were instituted, and Mr. Butterfield appointed receiver of the bankrupt's property. On the 11th of February, 1916, Edward N. Mills was appointed administrator of the estate of the plaintiff (deceased) by the Surrogate's Court of Erie County.

By reason of the financial condition of the plaintiff's estate, it is probable that the questions here raised become purely academic, and little is to be gained by reviving and continuing the action. Nevertheless these motions are before the court, and must be disposed of on their merits. It is not claimed the right of the plaintiff to be served with stock quotations is based upon any contract between the plaintiff and the telegraph company, but is predicated on the duty the company is claimed to owe the plaintiff and the public to serve all alike without discrimination. In his complaint, the plaintiff alleged his readiness to enter into a contract with the telegraph company for such service, and to observe any and all reasonable rules imposed on those given such service. The plaintiff alleged no damages, but simply sought to restrain threatened action; so we have the question presented sharply whether an action brought to enforce observance of a duty owed the plaintiff by a public service corporation survives the death of the plaintiff in the action. A search for judicial precedent so far has been fruitless in discovering any decided case where this question has been raised.

[1] Whatever rights the plaintiff had to service by the telegraph company was possessed equally by every other member of the community. If we may suppose that at the death of the plaintiff his business as a stockbroker was a successful going business, any one succeeding to that business would by law be entitled to the same service the plaintiff enjoyed—not by virtue of his successorship, but because of being one of the public, which the telegraph company is bound to serve without discrimination. One of the tests of whether a cause of action survives or abates is whether it is assignable or not. Blake v. Griswold, 104. N. Y. 613, 11 N. E. 137; Hegerich v. Keddie, 99 N. Y. 258, 1 N. E. 787, 52 Am. Rep. 25; Brackett v. Griswold, 103 N. Y. 425, 9 N. E. 438.

[2] Is this cause of action assignable? Bearing in mind the fact that the right claimed is the right to be served by the telegraph com-

pany the same as others, it must be seen that any formal assignment of this right would confer on the assignee no other or greater right than he already possessed. The assignor, by such an assignment, could not divest himself of his right to such service. It would still remain. The right, in a sense, is a purely personal right, as distinguished from a property right, but a personal right enjoyed equally with every other citizen of the state. If the plaintiff had sold his business, with its good will, the purchaser, irrespective of any bill of sale or assignment, could enforce the right to service of stock quotations regardless of whether the right to telegraph service had been formally included or reserved by the terms of sale. The right to service depends, not on the business done, but on the demand for the same, the payment for the service, and the compliance with the reasonable rules and regulations of the company governing the service.

Can it be fairly said that such a right survives the death of one who has had it—that it constitutes a part of his estate which may be sold and transferred like other property? It seems to us the question answers itself. Let us suppose a railroad company should refuse to carry a commuter between his suburban home and the city at the same fare accorded others, and the commuter brought suit to enjoin such action. Could it be contended that the cause of action survived the death of the plaintiff? Is there any difference in principle between the case supposed and the case now under consideration? The counsel for the administrator urges that there is such a distinction; that in the last analysis this section is one for the preservation of the plaintiff's business, and therefore involves a property right. The argument made is that without the benefit of the rapid service by wire of stock quotations the deceased plaintiff could not successfully transact business, and that by means of the enjoyment of such service the plaintiff had built up a large business, the clientage and good will of which became a valuable asset, which would be wholly destroyed by its withdrawal.

The argument has its appeal, and undoubtedly was a consideration which moved the court to sustain the injunction granted in this action. Nevertheless the argument proceeds upon the assumption that the plaintiff possessed some peculiar right or interest in the service not enjoyed by others, giving an added value to his business, and which he might pass on to others. Such, however, does not appear to be the fact, for any one acquiring such business and good will would be entitled to the same service the plaintiff enjoyed, not because the plaintiff had had the benefit of it, but because the law gives and guarantees to the purchaser or successor, as one of the public, the same rights and privileges—the right being not an incident to the business, but a right belonging to every member of the public. If the telegraph company were to refuse such a purchaser of the plaintiff's business the service of stock quotations, and the purchaser were compelled to enforce his rights to such service by action, it seems to us he would be compelled to base his action, not on the ground that his predecessor in title had enjoyed such service, but upon his own right as a member of the community to be given it. It is difficult, therefore, to see how the common-law right

of Mr. Tucker to stock quotations would enhance the value of the good will of the business to a purchaser.

These considerations lead us to conclude that the right to service by a public service corporation is in no proper sense a property right, and is not assignable, and therefore does not survive the death of the individual. The case would be different if, with the right to the injunction demanded, the plaintiff had coupled a claim for damages sustained by reason of an actual, instead of a threatened, violation of the duty it owed the plaintiff. To the extent of damages actually sustained, the cause of action would have survived. There is, however, no such element in this action. No damages are alleged or claimed, and the relief sought is only against threatened action.

[3] The objection is also made by the defendants that, assuming the cause of action survives, the receiver in bankruptcy, and not the administrator, is the proper party to be substituted; and inasmuch as the receiver, upon whom notice of this motion on the part of defendants has been served, does not oppose the granting of the order declaring an abatement, the order should be granted. Undoubtedly all rights of action in favor of a bankrupt on contract vest in the trustee by virtue of the federal Bankruptcy Act. Kessler v. Herklotz, 132 App. Div. 278, 117 N. Y. Supp. 45; Hahle v. Cole, 112 App. Div. 636, 98 N. Y. Supp. 1049.

[4] These very cases, however, hold that, where an action is pending at the time of his appointment, the trustee in bankruptcy may elect whether he will intervene or not. If he does not choose to become a party to the action, he may permit the action to proceed in the name of the bankrupt, and avail himself of the fruits of the litigation. This seems to be the effect of the cases cited where the bankrupt survives. Where he dies before the termination of the litigation, it would seem the administrator of the deceased bankrupt might ask for a substitution where the trustee or receiver neglects or fails to act in his own behalf. Here the receiver remains silent and takes no action, and I am of the opinion that under such circumstances, if the cause of action in fact survives, the administrator would have the right to continue the action. However, in view of the conclusion we have reached that the action does not survive, we think the defendants' motion to abate should be granted, and the motion to substitute the administrator should be denied.

So ordered.